UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| LINDA MICHELLE LANCE, Parent of L.L., minor child | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | 3:07-CV-411 (VARLAN / GUYTON) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 13 and 14] and defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 17 and 18]. Plaintiff Linda Lance, on behalf of her minor child, L.L., seeks judicial review of the decision of the Administrative Law Judge, the final decision of defendant Commissioner.

**I.      Procedural History**

Plaintiff filed an application on April 22, 2005 for supplemental security income child's benefits on behalf of her son, L.L., alleging disability based on behavioral problems and emotional disturbance (Tr. 53). After denial of the application at the initial level and upon reconsideration, plaintiff requested a hearing (Tr. 31-45). On May 15, 2007, a hearing was held before an ALJ to

review determination of plaintiff's claim (Tr. 557-618). Ms. Lance and her son, L.L., testified at the hearing. At the time of the hearing, L.L. was eight years old. On June 20, 2007, the ALJ found that L.L. was not disabled because he did not have any impairment or combination of impairments that resulted in marked or severe functional limitations (Tr. 12-25). On September 5, 2007, the Appeals Council denied plaintiff's request for review (Tr. 4-6), and the decision of the ALJ became the final decision of the Commissioner.

## II. ALJ Findings

The ALJ made the following findings:

> 1. The claimant was born on June 15, 1998. Therefore, he was a school-age child on April 22, 2005, the date the application was filed and is currently a school-age child (20 CFR 416.926a(g)(2)).
>
> 2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.924(b) and 416.972).
>
> 3. The claimant has the following severe impairments: attention deficit hyperactivity disorder; bipolar disorder; phonologic disorder with moderate expressive and mild receptive language deficits and Asperger's disorder (20 CFR 416.924(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).
>
> 5. The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926(a)).
>
> 6. The claimant has not been disabled, as defined in

> the Social Security Act, since April 22, 2005, the date
> the application was filed (20 CFR 416.924(a)).

(Tr. 12-25).

### III. Standards for Determining Eligibility for Childhood SSI Benefits

The SSI program, 42 U.S.C. § 1381, *et seq.*, is a federal program providing benefits to needy aged, blind, or disabled individuals who meet the statutory income and resource limitations. With respect to claims filed on behalf of children, the Act provides:

> (i) An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitation, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> (ii) Notwithstanding clause (i), no individual under the age of 18 who engages in substantial gainful activity ... may be considered to be disabled.

42 U.S.C. § 1382c(a)(3)(c).

The Social Security regulations set forth a three-step sequential analysis for the ALJ to follow when determining whether a child is disabled within the meaning of this provision. See 20 C.F.R. § 416.924(a)-(d). The first step is to determine whether the child is engaging in "substantial gainful activity." 20 C.F.R. § 416.924(b). If he is not, the ALJ considers at step two whether the child has a "medically determinable impairment(s) that is severe," *i.e.*, causes "more than minimal functional limitations." 20 C.F.R. § 416.924(c). Finally, at step three, if the ALJ finds a severe impairment, he then must consider whether the child has an impairment that "meets" or "medically equals, or "functionally equals" a disabling condition listed in the Listings. 20 C.F.R. § 416.924(d).

In this case, the ALJ followed this three-step analysis, first finding that L.L. has never

engaged in substantial gainful activity (Tr. 15). The ALJ then found that the medical evidence in the record was sufficient to establish that L.L. suffered from impairments which are "severe" within the meaning of 20 C.F.R. § 416.924(c), but his impairments did not approach the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § § 416.924, 416.925, 416.926). Accordingly, the ALJ proceeded to step three to determine whether L.L. had an impairment that was functionally equivalent to a listed impairment (Tr. 15-25).

In this regard, the regulations provide that when making a determination of functional equivalence in childhood disability cases, the ALJ must examine the record and consider the child's level of functioning in the following six "domains":

  i.     Acquiring and using information;

  ii.    Attending and completing tasks;

  iii.   Interacting and relating with others;

  iv.    Moving about and manipulating objects;

  v.     Caring for oneself;

  vi.    Health and physical well-being.

20 C.F.R. 416.926a(b)(1). If the child has "marked"[1] limitations in two of the domains or an

---

[1] 20 C.F.R. §416.926a(e)(2)(I) provides: "We will find that you have a 'marked' limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. 'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.' It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."

"extreme"[2] limitation in one domain, then his impairments will "functionally equal" the listings, and he will be found disabled. 20 C.F.R. § 416.926a(d).

Upon reviewing the disability-related documentation and medical evidence in the record in this case, the ALJ determined L.L. had "no limitation in acquiring and using information" (Tr. 20); "less than marked limitation in attending and completing tasks" when "medication complaint" (Tr. 21); "marked limitation in interacting and relating with others" (Tr. 22); "less than marked limitation in moving about and manipulating objects" (Tr. 23); "no limitation in his ability to care for himself" (Tr. 24); and "no limitation in health and physical well-being" (Tr. 24). Based on this assessment of the record, the ALJ found that L.L.'s impairments did not functionally equal any of the listings.

## IV.    Standard of Review

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is

---

[2] 20 C.F.R. § 416.926a(e)(3)(I) provides: "We will find that you have an 'extreme' limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limit only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. 'Extreme' limitation also means a limitation that is 'more than marked.' 'Extreme' limitation is the rating we give to the worst limitations. However, 'extreme limitation' does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing scores that are at least three standard deviations below the mean."

5

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).

**V.  Analysis**

On appeal, plaintiff argues that substantial evidence does not support the ALJ's disability determination. Plaintiff contends the ALJ erred in failing to: (A) consult a medical expert to determine whether L.L. met or equaled a listed impairment; (B) give the appropriate weight to the opinion evidence of Ms. West, L.L.'s teacher; and (C) properly consider Ms. Lance's testimony regarding her son's impairments and limitations [Doc. 14]. The Commissioner, in response, argues that the ALJ properly applied the three-step sequential analysis and properly found that L.L. was not disabled because he did not have any impairment or combination of impairments which resulted in marked or severe functional limitations, thus, his determination is supported by substantial evidence.

*A.  Medical Equivalency*

Plaintiff contends that this case should be remanded, pursuant to Social Security Ruling 96-6p, to obtain medical expert testimony by a specialist in childhood autism in light of L.L.'s worsening bipolar disorder and his diagnosis with Asperger's Disorder in December 2006, all of which occurred subsequent to the Commissioner's consultative examinations in August 2005 and April 2006. Social Security regulations permit, but do not require, an ALJ to "ask for and consider

6

opinions from medical experts on the nature and severity of [a claimant's] impairment(s)," and whether they equal the requirements of a listed impairment. 20 C.F.R. 416.927(f)(2)(iii). Similarly, Social Security Ruling 96-6p provides that an ALJ:

> Must obtain an updated medical opinion from a medical expert if, and only if, the ALJ believes that the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or [w]hen additional medical evidence is received that in the opinion of the [ALJ] ... may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p, 1996 WL 374180, at *3-4. These authorities accord an ALJ broad discretion in determining whether to consult with a medical expert, and this Court does not believe the ALJ erred by deciding that a consultation was not necessary in this case. The ALJ based his findings on a thorough analysis of the medical evidence, including reports and treatment notes from numerous medical professionals. This evidence was adequate and supported the ALJ's decision.

Plaintiff has the burden at step three of demonstrating, through medical evidence, that his impairment(s) meet all of the specified medical criteria contained in a particular listing. Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. Mar. 22, 2001). An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Because the listed impairments, if met, operate to cut off further inquiry, they should not be read expansively. Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

In this case, plaintiff fails to identify which listed impairment he believes he meets or equals. Instead, plaintiff asserts that there is evidence in the record to prove that his condition worsened in approximately May of 2006 and continued to deteriorate, which required the ALJ to obtain an updated medical opinion. The Court, then, must assume which listings plaintiff contends he meets

7

or equals and agrees with the government that the following listings apply: Listing 112.08 (personality disorders), 112.10 (autism), or 112.11 (ADHD).

In order to meet these listings, plaintiff must present medical evidence to show that he satisfied the criteria under both Part A and Part B found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. The ALJ did not discuss whether plaintiff had presented sufficient evidence to meet the "A" criteria, which includes certain medical findings to substantiate the existence of his disorders, apparently assuming that L.L. had. The Court also makes that assumption. Therefore, this Court's analysis will focus on the Part B criteria. To meet the "B" criteria, plaintiff must have proved that he had "marked" limitations in at least two of the following functional categories: age-appropriate cognitive/communicative functioning; age-appropriate social-functioning; age-appropriate personal functioning; or the ability to maintain concentration, persistence, or pace. Id.

Plaintiff points to no medically documented findings of marked limitations in at least two of the above-listed categories. The Court has examined the medical records as well and can find none either. While plaintiff was diagnosed with Asperger's, Dr. Altabet noted assessments conducted on December 6 and 13, 2006 revealed that L.L.'s "creativity was mildly delayed, with mild to moderate impairment regarding stereotypic behavior and interests" and that L.L. "initiated little social interaction and showed little interest in others, [but] was able to engage in social conversation" and his play skills, language, and non-verbal communication were adequately developed (Tr. 534). Furthermore, Dr. Altabet recommended, as part of L.L.'s treatment plan: individual counseling to help him learn to better understand and express his emotions and learn anger management, coping, and social skills; supervised socialization and play groups to help learn social skills; reviewing his medication, begin family counseling, improve sleeping habits, diet, and

exercise to decrease irritability and improve impulse control, and increase activities which would help bolster L.L.'s attention (Tr. 535). Also in the record are treatment notes from assessments conducted on October 27, 2006 and November 17, 2006, in which Dr. Altabet noted L.L. was "cooperative with testing and attempted all items presented" and his test results revealed that his "intellectual functioning fell within the Average range overall. ... ability to think in terms of non-verbal information was within the Average range, as was his ability to think in terms of verbal information" (Tr. 537). Furthermore, L.L.'s "Fluid Reasoning, Quantitative Reasoning, Visual-Spatial Processing, and Working Memory were within the Average Range. Knowledge was within the Low Average range" while his "adaptive behavioral skills were within the Moderately Low range overall" (Id.). The Court finds none of this evidence supports plaintiff's contention that his Asperger's Disorder results in marked impairments in at least two of the Part B criteria as required by 20 C.F.R., Pt. 404, Subpt. P, App. 1

The Court further finds the ALJ's determination that plaintiff's impairments do not functionally equal any of the listed impairments is also supported by substantial evidence. The ALJ correctly considered plaintiff's functioning in the six functional domains described in the regulations.

### 1. Acquiring and Using Information

The regulations describe the appropriate functioning of a child between the ages of six and twelve in the domain of acquiring and using information as follows:

> [The child] should be able to learn to read, write, and do math, and discuss history and science. [The child should be able] to use these skills in academic situations to demonstrate what [he or she has] learned; *e.g.*, by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class

> discussions. [The child should be able] to use these skills in daily living situations at home and in the community (*e.g.*, reading street signs, telling time, and making change.). [The child should be able] to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [his or her] own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv). The record shows the ALJ considered information provided by Ms. Bowers, L.L.'s teacher for two years, and Ms. Britton, L.L.'s speech therapist. Ms. Bowers reported that L.L. had no limitations in acquiring and using information. Ms. Britton also reported that L.L. had no problems in this area and that he was able to do the same work as the other children in his class (Tr. 20). Furthermore, plaintiff submitted as Exhibit A, which was also considered by the ALJ in making his determination, a Teacher Questionnaire prepared by Ms. West, who noted L.L. suffered a slight problem in certain measurements of acquiring and using information, but noted L.L.'s "main problem in this area is his ability to stay on task", which this Court finds more applicable to L.L.'s ability to complete tasks as opposed to his ability to acquire and use information. Thus, this Court finds the ALJ's determination that L.L. has no limitations in acquiring and using information is supported by substantial evidence.

## 2. Attending and Completing Tasks

The appropriate functioning of a child between the ages of six and twelve in the domain of attending and completing tasks is described as follows:

> [The child] should be able to focus [his or her] attention in a variety of situations in order to follow directions, remember and organize [his or her] school materials, and complete classroom and homework assignments. [The child] should be able to concentrate on details and not make careless mistakes in [his or her] work (beyond that would be expected in other children [of the same] age who do not have impairments). [The child] should be able to change [his or her] activities or routines without distracting [him or herself] or others,

10

> and stay on task and in place when appropriate. [The child] should be able to sustain [his or her] attention well enough to participate in group sports, read by [him or herself], and complete family chores. [The child] should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv). The ALJ found L.L. has a less than marked limitation in this domain (Tr. 21). The ALJ concluded that L.L.'s limitations in this area were not marked because L.L.'s "treating pediatrician, from January 1999 to December 2006, reported he had a spectacular response to Lithium and Adderall" (Tr. 21; 343). The record shows L.L. was examined by "Can Do Kids" on January 10, 2007 by Jennifer Adams, who noted L.L. "transitioned well between tasks" but "may be confused with task loading (several directions given at once)" and "required moderate verbal redirection back to task" (Tr. 476-78). Also, the record contains a "Prevocational Skills Checklist" from Monroe County School completed on March 8, 2004, which shows L.L.'s ability to "remain on task until completed" is "satisfactory" but that he "needs improvement" in staying on task "without direct supervision" (Tr. 213). In light of the evidence in the record, the ALJ's conclusion that L.L. has a "less than marked limitation" in this area is supported by substantial evidence.

### 3. Interacting and Relating with Others

The regulations describe the appropriate functioning of a child between the ages of six and twelve in the domain of interacting and relating with others as follows:

> [The child] should be able to develop more lasting friendships with children who are [his or her] age. [The child] should begin to understand how to work in groups to create projects and solve problems. [The child] should have an increasing ability to understand another's point of view and to tolerate differences. [The child] should be well able to talk to people of all ages, to share ideas, to tell stories, and to speak in a manner than both familiar and

> unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i)(2)(iv). In finding that L.L. has a "marked limitation" in this area, the ALJ noted that L.L.'s teachers advised that L.L. "had come a long way in this domain and there were only a few slight problems getting along with other children" (Tr. 22). The Court finds this determination supported by substantial evidence in light Ms. West's statement on the teacher questionnaire that behavior modification strategies needed to be implemented for L.L., Ms. Ramey's finding that "social interactive patterns appeared to be disruptive with regard to behavior" (Tr. 398), and Dr. Gettinger's treatment notes which indicate that "argumentative behavior with peers ... [and] oppositional behavior in school ... [and that he will] sometimes go into his room [and] shut himself off" (Tr. 364). Thus, the ALJ could properly conclude, given the evidence in the record, that L.L.'s ability to interact and relate with others is marked.

### 4. Moving About and Manipulating Objects

The regulations describe the appropriate functioning of a child between the ages of six and twelve in the domain of moving about and manipulating objects as follows:

> [The child's] developing gross motor skills should let [him or her] move at an efficient pace about [his or her] school, home, and neighborhood. [The child's] increasing strength and coordination should expand [his or her] ability to enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching, and hitting balls in informal play or organized sports. [The child's] developing fine motor skills should enable [him or her] to do things like use many kitchen and household tools independently, use scissors, and write.

20 C.F.R. § 416.926a(j)(2)(iv). As to this domain, the ALJ's finding that L.L. has a "less than marked limitation" is supported by substantial evidence (Tr. 23). Although L.L. receives occupational therapy at school, further testing at The Team Centers, Inc., Occupational Therapy

Assessment reveal that L.L. is able to stack a tower of blocks, string large beads following a pattern, complete a simple puzzle, snap and un-snap medium pop beads, color within the lines, throw, catch, and kick a ball with good timing and aim, dress and undress independently, and manipulate clothing fasteners (Tr. 522). Furthermore, Ms. Lance testified that L.L. participated in football, enjoys playing with Transformers, a toy which requires hand manipulation, is able to do household chores when asked, participates in art projects at school, specifically drawing, is able to run, throw and kick a ball, and dresses and bathes himself (Tr. 590-98). Therefore, it was reasonable for the ALJ to conclude that L.L. did not suffer from any significant limitations in this domain.

### 5. Caring for Yourself

The regulations describe the appropriate functioning of a child between the ages of six and twelve in the domain of caring for yourself as follows:

> [The child] should be independent in most day-to-day activities (*e.g.*, dressing yourself, bathing yourself) although [he or she] may still need to be reminded sometimes to do these routinely. [The child] should begin to recognize that [he or she] is competent in doing some activities and that [he or she] may have difficulty with others. [The child] should be able to identify those circumstances when [he or she] feels good about [him or herself] and when [he or she] feels bad. [The child] should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. [The child] should begin to demonstrate consistent control over [his or her] behavior, and should be able to avoid behaviors that are unsafe or otherwise not good for [him or herself]. [The child] should begin to imitative more of the behaviors of adults that [he or she] know.

20 C.F.R. § 416.926a(k)(2)(iv). As to this domain, the ALJ found that L.L. has no limitation in his ability to care for himself. This determination is supported by substantial evidence. As mentioned above, Ms. Lance's testimony established that L.L. is able to dress and bathe himself, although she may have to watch him while he does (Tr. 597-98). Also, Ms. Lance told Ms. Ramey, a consultative

13

examiner, that L.L. took his medications willingly and brushes his teeth without much supervision (Tr. 421). Ms. Ramey further noted that L.L. has a pet iguana at home, who he feeds and cares for as part of his daily chores (Id.).

### 6. Health and Physical Well-Being

This domain considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [the child's] functioning". 20 C.F.R. § 416.926a(1). In this domain, the ALJ found L.L. had "no limitation" (Tr. 24). This Court finds substantial evidence supports this finding. While L.L. suffers from severe mental impairments and was on medication to manage his impairments, prior to his mother taking him off them, his heath records indicate that he suffered "no cardiorespiratory, GI, or GU symptoms. No problems with appetite or sleep. [and] appear[ed] well and is engaging and in good spirits" (Tr. 343). Furthermore, Dr. Gettinger's treatment notes reflect that he consistently scheduled follow-up appointments to monitor L.L.'s progress on his medications and determine whether there were any side effects (Tr. 343-53).

Although the ALJ could have requested an additional medical opinion, he acted within his discretion when he did not do so. The evidence presented by plaintiff does not show that he suffered a listed impairment or that his impairments functionally equal a listed impairment. The ALJ thoroughly discussed his reasoning and incorporated the objective medical evidence of record into his findings and ultimate disability determination. Accordingly, his determination is supported by substantial evidence.

### B. *Opinion Provided by Ms. West, L.L.'s Teacher*

Plaintiff next contends that the ALJ erred by not considering the Teacher Questionnaire

completed by Ms. West on May 8, 2007.  However, the ALJ recognizes that Ms. West completed a questionnaire, although he refers to Ms. West as Ms. Betsy Maxwell.  The Court notes the signature on the questionnaire is "Betsy Maxwell West", thus the ALJ and plaintiff are referring to the same form (Tr. 19).  The ALJ further stated he "considered this information in context with previous reports from the claimant's teachers and the findings/opinions of Dr. Gettinger" (Id.).  The Court has no basis, and plaintiff has provided none, to disbelieve the ALJ in this regard.

The Court further finds the ALJ gave the appropriate weight to Ms. West's opinion.  SSR 06-03p clarifies how the Commissioner is to consider opinions and other evidence from sources who are not "acceptable medical sources", which includes "educational personnel, such as school teachers".  SSR 06-03p, 2006 WL 2329939.  While the ruling notes that information from "other sources" cannot establish the existence of a medically determinable impairment, the information provided "may provide insight into the severity of the impairments(s) and how it affects the individual's ability to function."  Id. at *3.  The ruling goes on further to state:

> Non-medical sources who have had contact with the individual in their professional capacity, such as teachers, ... are also valuable sources of evidence for assessing impairment severity and functioning.  Often, these sources have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time. ... For opinions from sources such as teachers, ... it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of speciality or expertise, the degree to which the source presents relevant evidence to support his or her own opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion.

Id. at *3-5.  The Court finds the ALJ considered the questionnaire completed by Ms. West and found it to be inconsistent with the other objective medical evidence of record, including treatment notes

from L.L.'s pediatrician, Dr. Gettinger. The ALJ also considered that the questionnaire was completed during the time Ms. Lance took her son off his prescriptions, which the Court finds is a proper "other factor" under SSR 06-03p. Accordingly, the weight given to Ms. West's teacher questionnaire is supported by substantial evidence.

### C. *Failing to Mention Ms. Lance's Testimony in the Opinion*

Plaintiff's final argument is that the ALJ committed error in failing to consider the testimony of L.L.'s mother regarding his impairments. Plaintiff contends the ALJ violated Social Security Ruling 96-7p in failing to mention Ms. Lance's testimony.

> The purpose of [SSR 96-7p] is to clarify when the evaluation of symptoms, including pain, under 20 C.F.R. 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for finding about the credibility of the individual's statements in the disability determination or decision.

SSR 96-7p, 1996 WL 374186, at *1. The regulations further provide that when assessing credibility the fact finder should consider the consistency of the claimant's statements, both internally and with other information in the record, the medical treatment history, medical evidence, and statements from other non-medical sources such as family members and friends. Id. at *5 (emphasis supplied).

As an initial matter, plaintiff's contention that the ALJ "fail[ed] to mention the testimonial evidence" of Ms. Lance is not well-taken. In his opinion, the ALJ stated that "[a]t the hearing, the claimant's mother acknowledged although he had initially taken Adderall and Lithium for the treatment of [ADHD] and bipolar disorder, she considered them ineffective ... The claimant's mother emphasized her son was very argumentative, easily distracted, and could not get along with others" (Tr. 16) and that his assessment of "the limitations present in this case" included consideration of

16

L.L.'s "mother's testimony and allegations of record" (Tr. 24). Thus, the Court finds the ALJ considered the lay testimony provided by Ms. Lance as well as the information submitted in her affidavit when reviewing her son's claim.

Moreover, in making his credibility determination, the ALJ stated that "the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely credible" (Id.). Given that L.L.'s testimony at the hearing was limited and that his mother's testimony comprised the majority of the testimony given and included statements concerning L.L.'s abilities in school, his interaction with his family and friends, and his medical treatment, the Court finds the ALJ did, in fact, consider Ms. Lance's testimony, as testimony provided by an "other person about how [L.L.'s] symptoms affect[ed]" him, but found it inconsistent with the other objective medical evidence of record. 20 C.F.R. § 416.929(c); see also Lashley v. Sec'y of Health & Human Servs., 708 F.2d 1048, 1054 (6th Cir. 1983) ("Perceptible weight must be given to lay testimony where ... it is fully supported by the reports of the treating physicians."). The record does not reflect that Ms. Lance's testimony was "fully" supported by L.L.'s pediatrician, Dr. Gettinger. For example, Ms. Lance testified that she took L.L. off of both Adderall and Lithium because it was not working, that his grades were dropping a little every six weeks, and he has problems focusing (Tr. 561; 564; 569; 583). Yet, Dr. Gettinger, who treated L.L. from January 30, 1999 to December 15, 2006 for acute medical conditions, attention deficit hyperactivity disorder, and bipolar disorder, indicated in his treatment notes that L.L. had a "spectacular response to Lithium ... [and] Adderall", and that L.L. was well-behaved, positive, active in the Boy Scouts, practicing cursive handwriting, reading well, and getting good reports from school (Tr. 16; 343-44). Additionally, the ALJ found Dr. Gettinger's impressions consistent with "information from the claimant's teachers, Shauna

17

Brown (classroom teacher) and Ms. Woody (speech pathologist)" (Tr. 17). Therefore, the Court finds substantial evidence supports the ALJ's credibility determination and treatment of Ms. Lance's testimony and affidavit.

**VI.    Conclusion**

Accordingly, the Court finds that the ALJ properly reviewed and weighed all of the medical source opinions to determine L.L. is not disabled. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[3] that plaintiff's Motion Summary Judgment [Doc. 13] be **DENIED** and the Commissioner's Motion for Summary Judgment [Doc. 17] be **GRANTED.**

>Respectfully submitted,
>
>     s/ H. Bruce Guyton
>United States Magistrate Judge

---

[3]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).